Ewing, C. J.
William Crane, the defendant in error, sued Daniel Cooper and Agnes Crane, executors of David Crane, dec., the plaintiffs in error, in the inferior Court of *177] Common Pleas of the *county of Essex, and declared in the common counts, upon promises by the testator, for money lent and advanced, money paid, laid out and expended, money had and received, for work and labor, and for goods, wares and merchandise, sold and delivered. . The defendants pleaded the general issue, with notice that they would give in evidence that the testator, David Crane, in his life time, on the 31st January, 1821, prosecuted an action of debt against William Crane, on an account and note, before Oliver Nuttman, Esq., one of the justices of the peace of the county of Essex; that William Crane in that suit set up, by way of set-off, an' account against the said David Crane, and if he had any demand for what he now claims, he ought to *223 liave set off the same in that suit, or is barred and precluded from demanding it; that the suit was tried before the j ustice and a jury, who rendered a verdict for the said David Crane, against the said William Crane lor $21.67 debt, with costs, and judgment was rendered thereon by the justice for that sum, and that the said debt and costs had been paid by the said William Crane, to the said David Crane; all which the said executors would insist upon by way of defence. On the trial in the court below, a verdict and judgment were rendered for William Crane, and errors are assigned here' upon the matters contained in certain bills of exceptions.
1. In the first place, it is said, that the court admitted unlawful evidence on the part of the plaintiff below. As appears by the bill of exceptions, he opened to prove that the testator in his life time, cut, carried away and sold, a quantity of wood and timber from the premises of the plaintiff; which evidence was admitted by the court after objection from the counsel of the defendants. In this, it is insisted, the court erred ; for that the cutting and carrying away the timber was an act of trespass; the claim arises ex delicto; the right of action died with David Crane; and that if any form of declaration could have been maintained, it should have been a special assumpsit, whereby the defendants might have been apprised of the nature of the demand.
A review of the ancient decisions on thjs subject is rendered unnecessary by the case of Hambly v. Trott, Cowp. 372, in which the whole were examined by the powerful mind of Lord Mansfield, and the result stated in the most clear and precise manner in the following terms : “ If it is a sort of injury by which the offender acquires no gain to himself at the expense of the sufferer, as *beating or [*178 imprisoning a man, there the person injured has only a reparation for the delictum in damages to be assessed by a jury. But where besides the crime, property is acquired which benefits the testator, there an action for the value of the property shall survive against the executor; as for *224 instance, the executor shall not be chargeable for the injury done by his testator in cutting down another man’s trees, but for the benefit arising to his testator for the value or sale of the trees he shall. So far as the tort itself goes, an executor shall ’ not be liable, and therefore it is, that all public and private crimes die with the offender, and the executor is not chargeable, but so far as the act of the offender is beneficial, his assets ought to be answerable, and his executors therefore shall be charged.” The rule thus distinctly and clearly laid down.has since invariably prevailed. In 1 Sch. and Lefroy, 264, Lord Redesdale says, “The principle of the law is that if any man become possessed of the property of another, though he became possessed by wrong, and might, (Turing his life, be made answerable for the wrong, yet that does not destroy the right which the other party had to the thing itself or the value of it, and he would have a remedy, for anything of that description after the death of the wrong doer against his executors. And in cases of timber, mines and the like, equity has in many instances obliged a party to account for what he had so taken.” In 3 T. R. 549, Lord Kenyon said, “■"Where a person is guilty of a tort, as by cutting down trees, and then dies, no action lies against his representatives-for damages arising out of the tortious act, but the value of the timber may be recovered out of his assets.” And Ohitty, in his treatise on pleadings, 1 vol. 80, says “ for inj uries to real property no action in form ex delicto can in general be supported against the personal representatives of the wrong doer, .though if trees, &c., be taken away and sold by the testator, assumpsit for money had and received lies against his executor.” The justice and. propriety of the rule that satisfaction should be made out of the estate of the deceased, are evinced to the mind and fully approve themselves upon the slightest reflection. What of soundness can there be in any argument which would restrain the injured party from recovering satisfaction out of the fund *225 which w'as composed in part of the fruits of the injury? Might it not with much greater reason be urged that the rule should be extended to enforce “a reparation *for [*179 the delictumand to enable a suffering party to obtain redress lor a slander, an imprisonment, or a battery, where there are sufficient assets ? On the argument it was insisted that to admit evidence of the kind now in question under the general terms'of a' count for money had and received would expose a defendant to great jeopardy from want of precise information of the nature of the plaintiff’s claim. But it is obvious there is no peculiar jeopardy iu this case ; nothing but what is common to most of the claims of which evidence may be given under this count; and the jeopardy may always bo avoided by a call on the plaintiff for a bill of particulars. I am of opinion the evidence was rightly admitted, and there is no error in this respect.
2. In the next place it is assigned for error that “ the court below charged the jury contrary to law, and so -misdirected the jury in matter of law.”
One of the demands on the part of the plaintiff was for money paid by him on and before the 11th day of April, 1820, for the use of David Crane, the testator, in discharge of a promissory note for $808, with interest, dated May 1st, 1818, payable to Jane Ross or order, at'one year after date, and given, as the plaintiff alleged, by David Crane for his own debt, and by himself as security merely for David Crane. Under the notice accompanying the plea the defendant gave in evidence certified copies from ttie docket of Oliver Nutlman, Esq., one of the justices of the peace of the county of Essex, and of the pleadings in1 the action therein mentioned. By these documents it appeared that on the 31st of January, 1821, David Crane commenced an action of debt against William Crane, that William Crane filed an account and claimed a set off for various items of cash, of work and labor done, for goods sold and delivered, &c., amounting to nearly $200, but did not exhibit any *226 claim, or demand any set off for the money now alleged to have been paid by him for David Crane in discharge of the above mentioned promissory note. The action was tried on the 15th February, 1821, by jury, and a verdict found and judgment rendered in favor of David Crane, for $21.67 debt, with costs. All which appears to have been paid by W illiam Crane to the justice on the 28th of April of the same year. In the progress of the trial before the Court of Common Pleas, it was insisted by the counsel of the executors, that the debt contained in the promissory note was the real debt of William Crane; and on this point evidence was given *180] *by both parties, not necessary here particularly to detail. The defendants, the executors, by their' counsel called on the court, as appeal’s by the bill of exceptions, to charge the jury that the plaintiff, not having set off the demands for which this action was brought in the suit before Oliver FTuttman, Esq., thereby precluded himself from all right to sue for or recover the same in this court.” But the court charged the jury that the plaintiff had not thereby precluded himself from such recovery; to which opinion and charge the defendants excepted.
The questions which this bill of exceptions presents to us are, 1st. Whether the claims for which this action was brought were, or either of them was, the subject of set off in the action before Justice FTuttman? And, 2d. If so, what is the legal effect of the omission to claim the off-set in that action.
The first of these questions depends on the construction of the fourteenth section of the act constituting courts for the trial of small causes, Rev. Laws 632. “ If the defendant have any account or demand against the plaintiff, he shall be permitted to discount or set off the same against the account, debt or demand of such plaintiff,, but such copy of his or her account, or state of his or her demand so intended to be set off, shall be delivered to ‘the said justice on or before the return day of the summons, or if on a warrant, then at *227 the time of hearing of the cause, and in default thereof the said account or demand shall not be received in evidence on the trial of the said cause.”
The claim of William Crane for the cutting and carrying away of the wood and timber from his premises, unless done by his consent or agreement, which is not alleged in the bill of exceptions, 'was during the lifetime of David Crane, and therefore at the time of the trial before Justice Huttman, in tort and for unliquidated damages. It could not therefore be the subject of set-off. Smock v. Warford, 1 South. 306; Edwards v. Davis, 1 Halst 394; Swing v. Sparks. 2 Halst. 59. It was said he might have waived the tort, and demanded the proceeds of the sales of the wood and timber. But he was under no obligation until the decease of David Crane to yield up his compensation for an essential part of the injury, in order to place the residue in a form whereby a set-off might be sought.
The claim of William Crane, for money paid for David Crane in discharge of a promissory note on which he was the surety merely, as *he alleges, of David Crane, [*181 was, if sustained by proof, a proper subject of set-off; and in the action before Justice Huttman, because the money had been previously paid. It was, however, contended that a set-off could not then have been demanded, because there was an agreement that the land for the purchase of which by David Crane the note was given, was on his death to belong to William, and he could not therefore recover until the death of David, and it was found the laud was not given to him. If there were any evidence in support of this allegation, the truth of which was strenuously denied by the counsel of the defendant, the matter should have been submitted to the jury on the question of fact, with proper instructions as to the law. The only evidence to this point contained in the bill of exceptions, is tho testimony of Edward Price, who said, “The note was given in part of the consideration for the purchase of about thirty acres of *228 land, sold to the testator by Jane Ross. Part was paid in money, and the note was given for the remainder. The plaintiff and testator were both present when the money was paid and the note given. He understood the money was to be raised to pay a debt due from Jane Ross to one M'Leod. He understood David Crane, the testator, was to pay the money. David made his mark to the note. He said he bought it to give it to the plaintiff, at his, the testator’s, death, __ The note was put in the possession of Mrs. Ross. The testator bought the land.” How it is most certain there is nothing in this testimony whereby William Crane, if merely surety and compelled as such to pay the money, could be restrained one hour, much less until the decease of David Crane, from legal measures for its recovery. There was no agreement that William should pay and wait until David’s decease, and have the land for his recompense. It may well be doubted whether the testimony shews anything mqre than an expression of the motive of David in making the purchase, an intent to give the land to William, an intent revocable at his pleasure. It would indeed be a singular arrangement, whereby a wealthy uncle as he was represented on the argument, should benefit his kinsman, to leave the nephew to pay for the land, to enjoy it himself during his own life, and then bountifully bestow it upon him at his decease.
The demand for money paid, laid out and expended, being a proper subject of set-off, the second question recurs, what is the legal effect of the omission to claim the set-off in the *182] action before * Justice Huttman? „The resolution of this question depends on the fifteenth section of the act .above mentioned, Rev. Laws, 633. “If any defendant neglect or refuse to deliver a copy of his or her account or state of demand against such plaintiff, he or she shall forever thereafter be precluded from having or maintaining any action for such account or demand, or from setting off the same in any future suit. Provided always, that where *229 the balance found to be due to sucb defendant exceeds the sum of one hundred dollars, then the said defendant shall not he precluded from recovering his or her account or demand against such plaintiff in any other court of record having cognizance of the same.” The plain and obvious language of this section requires the account or demand of the defendant to be delivered to the justice, whatever may he its amount. There is not the slightest foundation for the distinction that it is to be delivered when the balance falls short of §100, and may be omitted when it exceeds that sum. In all cases, it is to be delivered ; and, whatevor may be its amount, the penalty of preclusion from future action or set-off is equally imposed on neglect or refusal. Nor was the construction of the counsel of the defendant in error correct, that “found due” means in a subsequent action-to be brought in another court. The words mean in the very action before the justice. “Found due to such defendant.” What defendant? lie who has delivered his account for set-off to the justice. “ Then the said defendant shall not be precluded.” When ? When a balance exceeding the sum of §100 has been found due to him. Nor is the course of proceeding in such case obscure or difficult. If on the trial, whether before the justice alone or by a jury, the balance found to be due to the defendant exceeds one hundred dollars, the justice cannot give judgment, not for the plaintiff, because nothing is due to him, nor for the defendant, because the sum due exceeds the jurisdiction of the court. He is therefore to record the fact and dismiss the action, and then the defendant shall not be precluded from recovering in any other court of record having cognizance.
A very interesting, if not the most forcible, part of the argument of the counsel of the defendant in error on this head, consisted in pointing out the inconveniences which may result from the operation of the precluding provision contained in the statute. These inconveniences have not, however, as is believed, been practically suffered, and the *230 *1831 rule contained in the section, as I Understand it, has long since been stated by Mr. Pennington and Mr. Griffith in their treatises on the courts for the trial of small causes. To the argument ab inconvenienti, however, we cannot yield. It is founded on an assumption of fact we are not at liberty to admit, that the justices and their juries will systematically do wrong. The. defendant’s counsel supposes that parties conscious there are large and just claims against them, will on pretence of some small account, sue before the justices of the peace, compel the other party to claim a set-off, and then by management, intrigue, corruption, or from incompetency, induce the justice or jury, as the cause may be tried by the one or the other, to disregard the proofs of the defendant, find the amount due him to be less than one hundred dollars, and thus work great oppression and injustice. There is, however, but little cause for alarm. Such a course of things is not to be apprehended. It has not yet been experienced, and whenever it shall, the prompt interference of the legislature will correct the evil. Moreover, a defendant thus injured will now find redress by appeal; and in the Court of Common Pleas will seek and obtain the justice which the argument supposes will be denied him in the court for the trial of small causes.
It appears to me then, that the demand for the money paid in discharge of the promissory note was the proper subject matter of set-off, and might have been claimed in the suit before Justice Uuttman; that the plaintiff below was precluded from maintaining an action for that demand; that the jury should have been so instructed; that there is error in the charge of the court; and that for this cause the judgment should be reversed.
Such being the case it is not necessary to examine the other errors assigned.
Let the judgment be reversed, and a venire facias de novo issue.
*231 Ford, J.
William Crane declared in the court below, on an indebitatus assumpsit, against the executors of David Crane, deceased, for money lent to their testator, money paid, had and received, goods sold, and work and labor done and performed for him in his life time; and at the trial of the cause offered to prove that the testator in his lile time had cut and carried away certain wood and timber from the plaintiff’s premises to a considerable amount without any permission. This evidence, after being adjudged by the court, on objection and argument, to be admissible, *was, [*184 however, waived by the plaintiff, and not introduced. It becomes therefore quite unnecessary to enquire or determine whether the plaintiff had power to waive the tort or not; or in case he had such election, whether he could recover in assumpsit instead of action on the case, for as the evidence was waived and not adduced, the opinion of the court could have no possible operation in the cause.
The plaintiff then gave in evidence a certain promissory note (which he had paid off himself and taken up) subscribed first with his own name, and under that with the name of the testator, bearing date the first of May, 1818, whereby the subscribers jointly and severally promised to pay to Mrs. Jane Ross or her order, one year after date, eight .hundred and sixty-eight dollars, with interest; and he shewed that the testator had purchased of this Mrs. Ross a certain tract of land, and paid her part in cash, and for the balance of the purchase money had given her this note with the plaintiff lor security. The executors on the contrary, represented the plaintiff as having been principal in the note, and the testator his security; that the plaintiff being indebted to the testator on bond to this amount, but unable to raise the money, had given his note of the same amount as the bond, to Mrs. Ross, for the testator’s convenience, and on doing so that the bond had been given up to him. Id support of this opening, they proved that Edward Price was the agent of Mrs. Ross in selling the land, and that the testator pro *232 posed to him to assign a bond that he held against William Crane, in part payment for the land; that he shewed Mr. Price a writing which the testator called a bond against William Crane, and that Mr. Price read it in the presence of the witness, and agreed to take it in part payment; but the witness did not have the writing in. her hand nor read it. She further testified that shortly afterward she heard a conversation between the testator and William Crane respecting the bond that he owed to the testator, in which conversation William Crane consented that the testator might assign it to Edward Price, in part payment for the land, saying that as he owed the bond and would have to pay it, he might as well make the payment to one as to another. She was then asked whether William Crane, in that conversation, admitted the amount of the bond; but the court after objection and argument, were of opinion that the contents of the bond could not be proved otherwise than by the instrument *185] *itself, and therefore they overruled' the question. The rejection of that evidence is now assigned for error; but I apprehend that the rejection was proper. The rule 'which requires the deed itself to be produced in evidence is never to be dispensed with, unless such deed has been lost or destroyed, or has got into the hands, or under the power or control of the adverse party, who refuses to produce it oil notice. How here was no pretence of any loss or destruction of the instrument; on the contrary, it was alleged' to be existing in the hands of William Crane, and the executors, had given him notice to produce it. Then the fact of its being in his hands was necessary to be proved to the satisfaction of the court,, and until it was so proved, the court had no authority to receive parol evidence of the contents. Upon this point the proof was altogether deficient; it not only failed to show that the bond had ever been in the hands of William Crane since he executed it, hut on the contrary it shewed that the bond was last seen in the testator’s own hands; that he shewed it to Mr. Price, *233 and was forming a plan to assign it away; and as to its having been delivered up to Mr. Crane at the time when he and the testator made their joint note to Mrs. Boss, there was not a particle of proof to that effect. Presumption, if that was to be resorted to, lay all the other way; the testator as a prudent man would never have given up that bond till the note in which he was jointly bound for the money was brought to him cancelled. The proof the bond being in the hands of Mr. Crane was dcither direct nor presumptive. It might be in the hands of the executors themselves for all that the court knew, or might have been assigned away by the testator in 1ns lifetime, and evidence of its contents was properly resisted by the court.
The executors then set up another defence against the demand; they shewed the record of an action of debt which the testator had prosecuted against William Crane in the court for trial of small causes, eight months after William Crane had paid all the money on that note to Mrs. Boss, and insisted, that if such payment formed a valid demand against the testator, that he was bound by law to set it off in that action, and yet he had not done ir; they shewed by the record that he had brought in various other demands against the testator to the amount of $195.80, but that the testator’s account being, still larger by $21.69, he had recovered a verdict and judgment against William Crane for this latter sum; *aud they prayed the [*186 court to charge the jury according to the fifteenth section of the act, Rev. Laws 633, that William Crane, by neglecting to set off this demand against that action, was precluded from ever maintaining an action- for it. But the court charged the jury that he was not precluded by that act, in case the jury should now be of opinion that the balance then due to him exceeded one hundred dollars. Tn this charge I think the court mistook the law, and the true intent and meaning of the statute. The fourteenth section was intended to be directory to the justice, and compulsory *234 on him; it provides that “if the defendant have any account or demand against the plaintiff, he shall be permitted to discount or set off the same,” so the justice may not refuse to receive an account if it be presented. The next, which is the fifteenth section, was intended to be compulsory on the defendant; it provides that if he neglect or refuse to set off his account or demand, he shall forever thereafter be precluded from maintaining an action for the same;” so it lays an obligation on him to produce all his accounts or demands and this obligation is not repealed by any subsequent clause or passage in the act. The proviso, by which it was supposed' to be repealed, runs in these words, “Provided always, that when the balance found to be due to such defendant exceeds the sum of one hundred dollars, then the said defendant shall not be precluded from recovering his or her demand against such plaintiff, in any other court of record having cognizance of the same.” Now this proviso, instead of exonerating the defendant from the foregoing obligation to produce all his accounts and demands, supposes him to comply with that injunction, and only provides for a consequence that may possibly result from such compliance; it may appear from a production of all his accounts that the balance due to such defendant exceeds one hundred dollars; and it provides a remedy for this consequence of producing all his accounts before the justice, without relaxing the prior injunction for their production in the smallest degree. The production of all accounts is first strictly enjoined, and then the consequence that may result from it is fairly provided for. The production, and the consequence of production are riot only different things in their nature, but a provision is made for the latter that cannot be applied to the former without making the statute contradict itself; it would be saying to the defendant, you shall produce all your accounts, and after they are found to exceed one hundred dollars, *187] *you need not produce them. It is not fair to read *235 the statute in such a manner; it means to say to the defendant, you shall produce all your accounts, and in case they are found to make a balance in your favor exceeding one hundred dollars, you need not proceed any further in that court; its jurisdiction is too limited to do you justice, and you may sue elsewhere. The production of all the defendant’s demands is not peculiar to the court for small causes ; it is required of the defendant in every common law court in the state when ho is sued; it is a rule of peace; it enforces settlements; prevents the multiplication of suits; and is as useful in the court for small causes as in any other, and perhaps more so. Neither the justice nor the jury are to find the sum actually due to the defendant; their finding is, that it exceeds one hundred dollars; and that simply entered on the magistrate’s record, shews that the plaintiff has no demand; exposes him to pay the costs of a suit in which nothing was due to him; and gives the defendant an ample right and a remedy in another court. The. meaning of the statute evidently is, that where the balance is found by the justice, to exceed one hundred dollars, &c.; and this meaning is implied in the strongest manner, although the words by the justice are not to be found in the act; it results from the subject matter treated of in those two sections, which is the regulation of a suit in the justice’s court, and the word “found, ” must mean found in the justice’s court, of which the sections are treating, or the meaning will not be applicable to the subject matter ; it will be torn away from the subject and left at random. It is argued that the word “found” may mean “found in any other courtas if these sections were intended to make regulations for some other court, when their avowed object is a regulation for the justice’s court only. The statute says “ when the balance found due to such defendant exceeds one hundred dollars, then he may sue elsewhere; then and not till then, may he sue; it makes the finding to precede, and the suit elsewhere to follow after; hat the con *236 struction contended for would allow the suit elsewhere to be brought first, and the finding to follow after it, so as to reverse the meaning of the statute completely. Moreover, the words of the statute, “ found due to such defendant,” require the finding to be for a defendant, and they cannot be forqed, even by torture, to mean for a plaintiff, as they must do under the construction contended for, in case it should be adopted. Mr. Crane has'laid aside the character *188] of a defendant *and assumed that of a plaintiff; and must demand this finding to be for him as plaintiff im, this suit, or he cannot recover; and yet the statute says if it be found due to such defendant, thereby connecting the finding necessarily with the justice’s court and a defendant there, and not with a plaintiff here.
But the nature of this construction exposes it to another serious objection ; it countenances and even permits a record of the court for small causes, after that record has stood seven years in full verity, and still remains firm and unreversed, to be impeached and falsified by parol evidence, .and its merits overhauled in a collateral action. That record represents the balance of all accounts between .the parties at that time, as found by the oaths of the country and the judgment of the court, to have been twenty-one dollars against William Crane; but our record, if we affirm the present action and judgment, will represent the balance at that time to have been eight hundred dollars in his favor. Baron Gilbert, in his treatise on evidence, page 7, says, “ that records of courts of justice are authentic beyond all manner of contradiction:” Yet in this second suit we must slight the authenticity of the former record, and allow it to be most grossly contradicted. Baron Gilbert adds that “records are demonstrations of right.” Yet, if this judgment be affirmed, we shall have- the singular spectacle of two demonstrations, both of which are right, both verity, and both in utter contradiction; one a demonstration that the balance at that time was twenty-one dollars, and the *237 other that it was eight hundred dollars. If the defendant in the first suit voluntarily suppressed a part of his accounts, can his proof of that fact authorize him to impeach a record? or can a record ever he contradicted by parol evidence? Favorable cases are said to make bad precedents; they sometimes lead courts astray by the plain and urgent justice they present; but this presents no such fascinations; it would seem rather to excite a suspicion of there being something wrong about this demand, when the owner would rather be condemned in the suit before the justice than set it up; as if it quailed before the eye of the testator, not daring to encounter him in his lifetime, and as if it had gathered boldness only since his death. But bo its merits what they may, it comes too late; it ought to have been set off in the former action, as the statute imperiously required, in order to make a final settlement; it is now precluded by the express words of the statute, and if allowed will make a second *record contradictory to the [*189 former. The charge of the court below was in my opinion erroneous on this point, and the judgment for this cause ought to be reversed.
Drake, J., concurred.
Judgment reversed.